IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| CASTELLA METOYER LEE,  §<br>§<br>Petitioner,  §<br>§<br>v.  §<br>§<br>BOBBY LUMPKIN, Director, TDCJ-CID,  §<br>§<br>Respondent.  § | Civil Action No. 4:21-CV-699-O |

## **OPINION AND ORDER**

Before the Court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by Petitioner, Castella Metoyer Lee, a state prisoner confined in the Correctional Institutions Division of the Texas Department of Criminal Justice (TDCJ-CID), against Bobby Lumpkin, director of that division, Respondent. After considering the pleadings and relief sought by Petitioner, the Court has concluded that the petition should be denied.

## **I. BACKGROUND**

Stemming from an armed robbery of a Taco Bell in Arlington, Texas, Lee was charged in Tarrant County, Case No. 1517886R, with five counts of aggravated robbery with a deadly weapon (counts one through five), each count alleging a different complainant, and one count of unlawful possession of a firearm (count six). Clerk's R. 5–6, ECF No. 12-10. The indictment also included a repeat-offender notice. *Id.* at 6. Following a jury trial, the state waived one count of aggravated robbery and the jury found Lee guilty on the remaining counts, true to the repeat-offender notice, and assessed his punishment at 50 years' confinement and a $2,000 fine on counts one, two, three, and five and 20 years' confinement and a $2,000 fine on count six. *Id.* at 102–06, 112–16. Lee's convictions were affirmed on direct appeal and his petition for discretionary review was refused.

Docket Sheet 1, ECF No. 12-1. Lee also filed a state habeas-corpus application challenging his convictions, which was denied by the Texas Court of Criminal Appeals without written order on the findings of the trial court and the court's independent review of the record. SHR,[1] ECF No. 12-22; Action Taken, ECF No. 12-20. This federal habeas-corpus petition followed.

## II.  ISSUES

Lee raises three grounds for habeas relief, alleging insufficient evidence; an unreasonable stop; and ineffective assistance of counsel. Pet. 6–7, ECF No. 1.

## III.  RULE 5 STATEMENT

Respondent believes that Lee has exhausted his state-court remedies as to the claims raised, that his petition is timely filed, and that the petition is not subject to the successive-petition bar. Resp't's Answer 4, ECF No. 11.

## IV.  DISCUSSION

A § 2254 habeas petition is governed by the heightened standard of review provided for in the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as established by the Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. 28 U.S.C. § 2254(d)(1)–(2); *Harrington v. Richter,* 562 U.S. 86, 100 (2011). This standard is difficult to meet and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Harrington*, 562 U.S. at 102.

Additionally, the statute requires that federal courts give great deference to a state court's

---

[1]"SHR" refers to the record of Petitioner's state habeas proceeding in WR-91,980-01.

factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams v. Taylor*, 529 U.S. 362, 399 (2000).

Finally, when the Texas Court of Criminal Appeals, the state's highest criminal court, refuses discretionary review or denies state habeas-corpus relief without written order, opinion, or explanation, typically it is an adjudication on the merits, which is likewise entitled to this presumption. *Richter,* 562 U.S. at 100; *Singleton v. Johnson,* 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres,* 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). In such a situation, a federal court "should 'look through' the unexplained decision to the last related state-court decision providing" particular reasons, both legal and factual, "presume that the unexplained decision adopted the same reasoning," and give appropriate deference to that decision. *Wilson v. Sellers,* — U.S. —, 138 S. Ct. 1188, 1192 (2018).

### A. Insufficient Evidence

Under his first ground, Lee claims that the evidence was insufficient to support his convictions because the gun used in the robbery was never fired; there was no one harmed; the gun was not real; and "multiple witnesses stat[ed] that they could not identify if [the] gun was real or fake." Pet. 6, ECF No. 1. Federal courts have extremely limited habeas review of claims based on the legal sufficiency of the evidence, and the standard for reviewing such claims is supplied by *Jackson v. Virginia,* 443 U.S. 307 (1979). Applying that standard and relevant state law in the last reasoned opinion on the issue, the state appellate court addressed the claim as follows:

3

In his first point, Lee argues that the evidence is insufficient to prove that he used or exhibited a firearm as alleged in the aggravated robberies and, similarly, is insufficient to show that he unlawfully possessed a firearm. He points to the fact that multiple witnesses testified that they did not know if the gun they saw was real or only a replica. He also points to his own testimony to establish that the gun was not a real firearm and to the detective's testimony that the police never recovered the gun.

### A. Standard of Review

Federal due process requires that the State prove beyond a reasonable doubt every element of the crime charged. *Jackson v. Virginia,* 443 U.S. 307, 316, 99 S. Ct. 2781, 2787 (1979); *see* U.S. CONST. amend. XIV. In our due-process evidentiary sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson,* 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman v. State,* 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson,* 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman,* 520 S.W.3d at 622.

The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Queeman,* 520 S.W.3d at 622. Thus, when performing an evidentiary-sufficiency review, we may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman,* 520 S.W.3d at 622. Instead, we determine whether the necessary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict. *Murray v. State,* 457 S.W.3d 446, 448 (Tex. Crim. App. 2015); *see Villa v. State,* 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Murray,* 457 S.W.3d at 448–49.

A deadly weapon is defined as "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury" or "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Penal Code Ann. § 1.07(a)(17). A "gun" is not a deadly weapon per se, but a "firearm" is. *See* Tex. Penal Code Ann. § 1.07(a)(17)(A); *Boyett v. State,* 692 S.W.2d 512, 517 (Tex. Crim. App. 1985); *Johnson v. State,* No. 07-14-00155-CR, 2016 WL 1274928, at *2 (Tex. App.–Amarillo Mar. 31, 2016, pet. ref'd) (mem. op., not designated for publication); *Arthur v. State,* 11 S.W.3d 386, 389 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd). "Gun" is a much broader term

4

than "firearm" and may include such non-lethal instruments as BB guns, blow guns, pop guns, and grease guns. *Johnson,* 2016 WL 1274928, at *2; *Arthur,* 11 S.W.3d at 389.

### B. Discussion

#### 1. The Evidence

Lee admitted that the first time he asserted that the gun was only a look-alike was during his trial testimony. Before that, Lee had denied committing the offense and had said nothing suggesting the gun was a "fake." At trial, Lee asserted that if the police needed to recover the gun, he could tell them where it was or, at least, where he had tossed it about a year earlier. When the prosecutor asked Lee to describe the gun in the Taco Bell photos, Lee acknowledged that it looked like a revolver.

Wendy Rodriguez, one of the Taco Bell employees, agreed that the robber had a gun and asserted that he pointed it at "each and every one of us, I guess, to scare us." She did not know if the gun was real, but she thought so at the time.

Maria Ceja, a second Taco Bell employee, did not balk when asked if she saw a gun, saying that she saw it when the robber pointed it at them and that she was scared: "I was afraid that he was going to shoot." She admitted not being able to tell if the gun was a firearm or a BB gun, but when the prosecutor asked Ceja what she had thought the robber would do if they did not give him the money, she answered, "That he was going to kill us. That's why I said, no, let him take everything."

A third Taco Bell employee, Guadalupe Velaquez, stated that the robber "came in all dressed in black and with a pistol in his hand," pointed the gun at them, and threatened them, and at the time, they thought it was real. If they did not do as they were told, Velaquez thought that the robber would hit them or shoot them with his gun, hurting or killing them.

Omar Bouffine, the fourth Taco Bell employee, stated that because the gun had no orange tip, he thought it was real. Knowing the difference between a revolver and a semiautomatic, Bouffine asserted that the gun he saw was a revolver.

Detective Allen Constantino, who was assigned to the August 16, 2016 Taco Bell robbery, stated that from reviewing the video, he could tell that the gun was a revolver. But he acknowledged that he never recovered the gun.

Another detective, Justin Coffee, who had been assigned to investigate an August 22, 2016 robbery at a Burger King that Lee also admitted committing at trial, stated, "I don't have the ability to look at a gun on video and to tell anybody whether

or not it was real or not." But from watching the Burger King video, Detective Coffee asserted that he could tell that the robber had a "revolver" in his hand.

One of the victims of the Burger King robbery, Sherrie Walton, testified that the robber put the gun to her head. When asked what she thought would happen if she did not comply with the robber's instructions, she responded, "I'm assuming [he brought the gun] to shoot me. You don't bring a gun if you don't plan on using it." She described the gun as "an older gun. Like a revolver as opposed to [a semiautomatic]."

Mark Porter, a forensic-video analyst for the Tarrant County District Attorney's Office, watched the surveillance videos for both the Taco Bell and Burger King robberies and stated that the weapon appeared to be "a dark-colored firearm" with "a protruding hammer . . . on the back of the firearm." He agreed that it appeared to be a revolver "[b]ecause of the cylindrical shape that's located right in front of the hammer right in front of where the hand is gripping the weapon." In Porter's opinion, which he based on owning several firearms, he saw nothing in the videos that suggested the gun was not a real firearm.

**2. Disposition**

The various witnesses repeatedly referred to a gun, a pistol, or a revolver, and the video shows Lee pointing such an object. Testimony using any of the terms "gun," "pistol," or "revolver" suffices to authorize a jury's deadly-weapon finding. *Rhodes v. State,* No. 02-04-00323-CR, 2005 WL 1593953, at *2 (Tex. App.–Fort Worth July 7, 2005, no pet.) (mem. op., not designated for publication) (citing *Wright v. State,* 591 S.W.2d 458, 459 (Tex. Crim. App. [Panel Op.] 1979)).

But Lee maintains that there are limits to a jury's inferences and cites *Cruz v. State* for the proposition that although a jury can reasonably infer from the victim's testimony that the "gun" used while committing the crime was, in fact, a firearm, one important qualification exists—"[a]bsent any specific indication to the contrary at trial." 238 S.W.3d 381, 388 (Tex. App.–Houston [1st Dist.] 2006, pet. ref'd). In Lee's case, as just such a "specific indication to the contrary," he points to his own testimony and to the State's never having recovered the gun to contradict that testimony. We are not persuaded.

Here, Lee's argument turns on whether his testimony sufficed to create a reasonable doubt. The jury, as the factfinder, determines witnesses' credibility, and for each witness, it can choose to believe all, some, or none of that witness's testimony. *See Chambers v. State,* 805 S.W.2d 459, 461 (Tex. Crim App. 1991); *Chasco v. State,* 568 S.W.3d 254, 258 (Tex. App.–Amarillo 2019, pet. ref'd). The verdict shows that the jury disbelieved Lee, which was reasonable given that

6

- Lee's testimony was self-serving;

- Lee was the person who disposed of the gun in the first place, making it unavailable for trial;

- Lee waited until trial to assert that the gun was really a pellet gun, effectively precluding its timely recovery;

- if the gun were a pellet gun, producing it would have exculpated Lee, not incriminated him, so his discarding the gun circumstantially evidenced a firearm; and

- by that point in time (Lee was the last witness to testify during the guilty/not-guilty phase, and he admitted committing the robberies only after hearing the State's evidence against him), Lee's offer to help recover the gun might have seemed disingenuous and manipulative. Viewing all the evidence in the light most favorable to the verdict, we hold that a rational factfinder could have found beyond a reasonable doubt that Lee used or exhibited a firearm during the robberies and that he was a felon unlawfully in possession of a firearm. *Jackson,* 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman,* 520 S.W.3d at 622; *Chambers,* 805 S.W.2d at 461; *Rhodes,* 2005 WL 1593953, at *2.

Mem. Op. 4–9, ECF No. 12-2 (footnote omitted).

The state court applied the proper standard of *Jackson v. Virginia*, and, in view of the evidence presented at trial, its application of that standard was not objectively unreasonable. Construing the evidence in the light most favorable to the prosecution, the state court found, in effect, that a rational juror could have disbelieved Lee's testimony and inferred that he had menacingly displayed a real gun. The Court agrees that the victims' perception that the gun was real, the surveillance video(s) and photographs taken from the video(s) showing Lee holding what appears to be a real gun, along with his actions, and the testimony of the detectives and forensic-video analyst, in combination, was sufficient evidence upon which a rational juror could find that a real gun was used in the robbery. Nevertheless, while none of the evidence conclusively proves that Lee

7

used a real—as opposed to a fake or pellet gun in the robbery, it is nonetheless sufficient to uphold his conviction given the limited scope of our review.

### B. Search and Seizure

Under his second ground, Lee asserts that the traffic stop of his vehicle was unreasonable, implicating a Fourth Amendment violation. Fourth Amendment claims however are barred from federal habeas review. *Stone v. Powell,* 428 U.S. 465, 494 (1976) (holding Fourth Amendment claims are barred from federal habeas consideration if the Lee had a full and fair opportunity to litigate his claims); *Janecka v. Cockrell,* 301 F.3d 316, 320 (5th Cir. 2002) (interpreting "'opportunity for full and fair litigation' to mean just that: 'an opportunity'"). Texas procedure affords all defendants an opportunity to pursue Fourth Amendment claims at the trial and appellate level. As such, Lee "received a full and fair opportunity to litigate" his illegal-traffic-stop claim, as required under *Stone,* regardless of whether he took advantage of that opportunity. *Register v. Thaler,* 681 F.3d 623, 628 (5th Cir. 2012) (providing "the *Stone* bar applies even where the Lee did not avail himself of the litigating opportunity provided by the state courts"). Accordingly, this claim is barred from federal habeas review.

### C. Ineffective Assistance of Counsel

Under Lee's third and final ground, he claims that he received "insufficient" assistance of trial counsel, and petitioned for another attorney, because he and his attorney were "never on common grounds." Pet. 7, ECF No. 1. This bare-bones claim is so vague and ambiguous that the Court cannot reasonably frame a claim, however Lee was more specific in his state habeas application, in which he claimed his trial counsel was ineffective because he (any spelling, grammatical, and/or punctuation errors are in the original):

8

>   failed to check the trial forms[–*i.e.,* the jury charges,] which lacked the proper notifications of acquittal of "Aggravated Robbery" if not proved without a reasonable doubt. State admitted to this error (see states brief). This resulted in jury not looking into the lesser charge which is "Robbery". Basically persuading the jury to convict of one charge "Aggravated Robbery[.]" "[P]ointing to another fact, the state defensive attorney led the witnesses the whole trial. Knowing that every element in a crime has to be met!" Defense attorney led the witnesses to testify on these terms."
>   This was done without any objection on [trial counsel's] part.

SHR 29, ECF No. 12-22.

A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey,* 469 U.S. 387, 393–95 (1985); *Strickland v. Washington,* 466 U.S. 668, 688 (1984). An ineffective-assistance claim is governed by the familiar standard set forth in *Strickland v. Washington,* under which a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland,* 466 U.S. at 688. Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 687, 697. In applying this standard, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id.* at 668, 688–89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689.

Where a petitioner's ineffective-assistance-of-counsel claims have been reviewed on their merits under the *Strickland* standard and denied by the state courts, federal habeas relief will be granted only if the state courts' determination involved an unreasonable application of *Strickland* in light of the state-court record, a substantially higher threshold. *Richter,* 562 U.S. at 100–01 (quoting *Williams v. Taylor,* 529 U.S. 362, 410 (2000)); *Bell v. Cone,* 535 U.S. 685, 698–99 (2002).

Thus, a federal court's review of state-court decisions regarding ineffective assistance of counsel must be "doubly deferential" so as to afford "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow,* 571 U.S. 12, 15 (2013) (quoting *Cullen v. Pinholster,* 563 U.S. 170, 190 (2011)).

The state habeas judge referred Lee's state habeas application to a magistrate judge for resolution of the issues and preparation and entry of findings of fact and conclusions of law. SHR 110, ECF No. 12-22. Toward that end, the magistrate judge entered the following relevant factual findings on the issue:

14. The Second Court of Appeals acknowledged that the jury instruction "omitted the instruction that the jury must acquit if it did not find guilt beyond a reasonable doubt.

15. [Trial counsel] did not object to the acquittal omission.

16. The Second Court of Appeals found that the jury instruction was not egregiously harmful because the Texas Court of Criminal Appeals held, in a similar case, as follows:

> "This instruction properly informed the jurors to consider Lee's requested instructions on lesser included offenses . . . The charge read as a whole adequately instructed the jurors about acquitting Lee and about considering the lesser included offenses requested by Lee."

17. [Lee] presents no evidence to support his claim that the outcome of the trial would have been different had counsel objected to the lack of acquittal language in the jury instruction.

18. The jury charge omitted the "not guilty" option for the lesser-included robbery offenses.

19. [Trial counsel] did not object to the omission of the "not guilty" option for the lesser-included robbery offenses.

20. The Second Court of Appeals held that "any harm [Lee] suffered" from the

        omission of the "not guilty" option for the lesser-included robbery offenses "was theoretical, not actual."

21. The Second Court of Appeals held that "[i]n the context of [Lee's] testimony and his counsel's jury argument, robbery convictions were [Lee's] best-case scenarios.

22. The Second Court of Appeals specifically held that "the jury verdict on aggravated robbery mooted any error in the robbery verdict forms."

23. Lee presents no evidence to support his claim that the outcome of the trial would have been different had counsel objected to the lack of the "not guilty" option regarding the lesser-included offenses in the jury instruction.

24. Lee does not present specific facts to support his claim that trial counsel failed to properly object to the State's questioning of its witnesses.

25. Lee's claim that trial counsel failed to properly object to the State's questions is conclusory.

26. There is no evidence that the outcome of the trial would have been different had counsel objected to the State's questions.

27. There is no evidence that the outcome of the proceeding would have been different but for the alleged misconduct.

SHR 117–19, ECF No. 12-22 (citations omitted).

        Based on those findings, and applying the *Strickland* standard, the magistrate judge concluded that Lee had failed to prove that he received ineffective assistance of trial counsel. *Id.* at 121–21. The magistrate judge's actions were subsequently adopted by the state habeas judge and the Texas Court of Criminal Appeals denied relief based on the trial court's findings and its own independent review of the record. *Id.* at 127; Action Taken 12-20. Lee presents no evidence or persuasive argument to rebut the state court's findings. Therefore, relying on the presumptive correctness of those findings, and deferring to the state courts' on the matters of state law, the state court's application of *Strickland* was not objectively unreasonable under the doubly-deferential

standard applied to such claims. Even if trial counsel performed deficiently by failing to object to the omissions in the jury instructions, Lee has failed to establish that he was prejudiced or that the omissions in the instructions violated clearly established federal law. Further, Lee's conclusory allegation that counsel was deficient for failing to object to the state's leading questions is insufficient to raise a constitutional issue. *Green v. Johnson,* 160 F.3d 1029, 1042 (5th Cir. 1998) (providing "[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue").

## VI.  CONCLUSION

For the reasons discussed herein, Lee's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**. Further, for the reasons discussed, a certificate of appealability is **DENIED**.

**SO ORDERED** on this 10th day of December, 2021.

_____
Reed O'Connor
UNITED STATES DISTRICT JUDGE